**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOE PENA,
    Plaintiff,

v.                     No. CV 09-1015 CG

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's *Motion to Remand or Reverse Administrative Agency Decision* (Doc. 18) ('Motion'), filed on November 13, 2009. The parties consented to have the undersigned magistrate judge conduct all proceedings and enter final judgment. (Docs. 4, 7.) The Court has reviewed Plaintiff's Motion (Doc. 18), Plaintiff's *Memorandum in Support of Motion to Reverse of Remand Administrative Agency Decision* (Doc. 19), *Defendant's Response to Plaintiff's Motion to Reverse and Remand* ('Response') (Doc. 20), Plaintiff's *Reply in Support of Motion to Reverse of Remand Administrative Agency Decision* (Doc. 21), and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record ('AR'). This Court finds that the Administrative Law Judge (ALJ) failed to apply the correct legal standards in adjudicating Mr. Pena's case. Therefore, the Court will **GRANT** Plaintiff's Motion and **REMAND** the case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

### I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*,

372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity." However, this step is not used for redetermining disability after a child who was previously receiving social security benefits turns 18. *See* 20 C.F.R. § 416.987(b). At the second step, the claim must show that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

residual functional capacity (RFC), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   **Background**

Joe R. Pena is a 23 year old man with a history of mental disabilities and an extensive history of treatment for those disabilities. Mr. Pena was removed from his home when he was 5 years old due to repeated instances of sexual and physical abuse in the household. *See* Administrative Record ('AR') at 138-39, 209. Mr. Pena spent most of his childhood in foster homes or treatment centers. *Id.* at 138-39, 209, 234, 239. Mr. Pena's cognitive impairment is partially attributed to a severe traumatic brain injury that he suffered as a teenager after he was hit by a car while riding his bicycle. *Id.* at 137. Since that time Mr. Pena has suffered from, among other things, severe mood swings, paranoia, seizures, suicidal ideation, substance abuse, and a general inability to concentrate or conform his behavior to societal norms in dealing with peers and supervisors. *See, e.g.*, *Id.* at 111, 203, 208-09, 211-25, 229-32. As a child, Mr. Pena was prescribed Lithium, Seroquel, and other depressants and anti-psychotic medications in an attempt to treat his disabilities. *See, e.g.*, *Id.* at 115, 208, 211, 231. Mr. Pena was hospitalized in a psychiatric institution at least once due to these disabilities. *Id.* at 208-09. He was frequently listed as having a Global Assessment of Functioning ('GAF') level of less than 50.[2] *See, e.g.*, *Id.* at 139, 207-210. He

---

[2] The GAF scale is used by doctors and considers a patient's psychological, social, and occupational functioning. Individuals with a GAF between 21-30 typically experience behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment and are unable to functional in almost all areas. Individuals with a GAF of between 41-50 suffer from symptoms such as suicidal ideation, severe obsessive rituals, and have serious impairments in social, occupational, and school functioning. *See* Diagnostic & Statistical Manual of Mental Disorders at 384 (4th ed. American Psychiatric Society, 2000) ('DSM').

has been unable to keep a job for more than a few weeks because of his inability to work well with co-workers and supervisors and he stopped looking for work several years ago. *See, e.g.*, *Id.* at 138, 185.

Mr. Pena successfully applied for supplemental security income under Title XVI of the Social Security Act as a minor in March of 2003. *Id.* at 59. The Social Security Administration determined that Mr. Pena did suffer from disabling major depression. *Id.* at 200-03. This finding was largely influenced by Mr. Pena's hospitalization in a psychiatric institution. *Id.* at 203. The agency noted that "Mr. Pena has had multiple residential treatment placements. He is depressed and admits to suicidal ideation. He engages in fights in order to be struck . . . He was psychiatrically hospitalized in May 2003 and placed in residential treatment after discharge." *Id.* Mr. Pena received social security disability checks he turned eighteen years old, at which point his disability determination was reviewed pursuant to Section 1614(a)(3)(H) of the Social Security Act. Any children receiving social security disability benefits must be re-evaluated under the five step sequential evaluation process used for adult disability claims once they reach the age of eighteen. *See* 20 C.F.R. 416.920(a).

During the course of this reevaluation, Mr. Pena met with Dr. Charles Mellon in June of 2007. AR at 170-87. Dr Mellon is a consultative examiner with the Disability Determination Services ('DDS').[3] *Id.* at 35, 170-87. Dr. Mellon concluded that Mr. Pena had a borderline personality disorder and that he might only have borderline intellectual

---

[3] Disability Determination Services is the state agency with which the Social Security Administration has contracted to develop the medical record in Social Security claims at the initial and reconsideration levels. See 20 C.F.R. § 404.1519s.

functioning. *Id.* at 186. Dr. Mellon found that Mr. Pena had a GAF of 51. *Id.* Dr. Mellon further found that Mr. Pena was mildly limited in his ability to understand and remember complex instructions and that he was moderately limited in his ability to carry out those instructions. *Id.* Dr. Mellon also found that Mr. Pena was moderately limited in his ability to interact with both co-workers and supervisors and to work without supervision. *Id.*

Dr. Elizabeth Chiang, a Medical Consultant with DDS, also reviewed the case and prepared a Mental Residual Functional Capacity Assessment for Mr. Pena. *Id.* at 35, 146-62. Dr. Chiang concurred with Dr. Mellon's finding that Mr. Pena suffered from borderline personality disorder. *Id.* at 156. She indicated that Mr. Pena is moderately limited in his ability to understand and carry out detailed instructions and to sustain an ordinary routine without supervision. *Id.* at 156, 159-64. Dr. Chiang further found that Mr. Pena is moderately limited in his ability to react appropriately to criticism, and to get along with co-workers without exhibiting behavioral extremes. *Id.* at 35, 159-64.

Despite the findings of Dr. Chiang and Dr. Mellon, the Social Security Administration determined that Mr. Pena was no longer disabled and his benefits were terminated on February 20, 2008. *Id.* at 48-50. This determination was upheld by a Disability Hearing Officer. *Id.* at 30-41. Mr. Pena appealed the determination and he requested a hearing before an Administrative Law Judge. *Id.* at 27. ALJ George W. Reyes heard Mr. Pena's case on August 8, 2008. *Id.* at 379-409. Mr. Pena testified at the hearing; he was assisted by his former attorney, Michelle Baca.[4] *Id.* at 11. Pamela Bowman, a vocational expert, also appeared at the hearing. *Id.*

---

[4] Mr. Pena's current counsel did not begin representing him until after the ALJ had entered a final decision.

On March 4, 2009, ALJ Reyes found that Mr. Pena was not disabled and denied the application for disability benefits. *Id.* The ALJ found at step two of the SEP that Mr. Pena did suffer from borderline personality disorder and a mood disorder and that those were "severe impairments" pursuant to 20 C.F.R. § 416.920(c). However, at step three, the ALJ found that the personality and mood disorders did not meet the criteria of a listed impairment as outlined in 20 C.F.R. §§ 416.920(d), 416.925; 416.926. *Id.* at 12. Mr. Pena was found to have no relevant past work experience at step four. *Id.* at 16. Therefore, the ALJ's decision centered on the step five determination of whether Mr. Pena is able to perform other work in the national economy, considering his residual functional capacity (RFC), age, education, and work experience. *Id.* at 17.

In determining whether there was sufficient work in the national economy which Mr. Pena could perform, ALJ Reyes described Mr. Pena's RFC as:

> [T]he claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can concentrate for two hours at a time; he is limited to simple, routine, repetitive tasks; and, he is limited to work that is not fast paced.

*Id.* at 14.

The ALJ presented Mr. Pena's RFC to Pamela Bowman, the vocational expert present at the hearing. Ms. Bowman was asked in a hypothetical question whether there was sufficient work in the national economy for someone who i) can concentrate up to two hours at a time, ii) is limited to simple, routine, repetitive tasks not performed in a fast paced production environment, iii) can only handle simple, work related decisions and few work place changes, and iv) can perform up to a 'medium' level of work. *Id.* at 17, 404-408. Ms. Bowman stated that there were two unskilled, medium jobs that this hypothetical

7

claimant could perform: grocery store stacker/bagger and odd job worker/caretaker. (Doc. 20, Ex. 1; Ex. 2); AR at 406. Based on the vocational expert's testimony, the ALJ determined that Mr. Pena was not disabled. AR at 17.

The ALJ's RFC determination never mentioned the moderate limitations noted by Dr. Mellon and Dr. Chiang with regard to Mr. Pena's ability to interact with co-workers and supervisors. *See*, *Id.* at 14. Neither did the ALJ mention these interactive limitations in posing the hypothetical question to the vocational expert. *Id.* at 404-408. Mr. Pena contends that the ALJ's failure to include these restrictions in the hypothetical question constitute legal error and requires remand of the ALJ's decision. (Doc. 19). The Court agrees and, for the reasons set forth below, will remand this case to the Commissioner.

### IV. Analysis

Mr. Pena contends that the ALJ committed legal error at step five by failing to include all of the limitations borne out by the record when posing the hypothetical question to the vocational expert. *Id.* Determining the validity of the hypothetical question often requires an examination of the underlying RFC since the hypothetical question must be based, among other things, on the RFC. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1270 (10th Cir. 2008) ("[A] proper finding of [a claimant's] mental and physical residual functional capacities . . . is necessary to correctly phrase the ALJ's hypothetical question to the VE."). The Court finds that the ALJ committed legal error in formulating Mr. Pena's RFC and that the hypothetical question presented to the VE was similarly defective.

### A. The ALJ's RFC Determination Was Improper

In formulating a claimant's RFC, the ALJ must consider all of the claimant's symptoms and determine the extent to which these symptoms are reasonably supported

8

by objective medical evidence. *See* 20 C.F.R. 416.929; SSRs 96-4p; SSRs 96-7p. The ALJ must therefore always consider and address medical source opinions in the record. *See* SSR 96-8p.[5] If the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8p ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Furthermore, the ALJ's decision must give "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion." *Langley*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004); 20 C.F.R. § 416.927(d)(2). Failure to comply with these regulatory requirements requires remand. *Robinson v. Barnhart*, 366 F.3d 1078, 1082-83 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

ALJ Reyes' RFC determination was improper because he failed to fully consider the medical opinions of Dr. Mellon and Dr. Chiang. The opinions of Dr. Mellon and Dr. Chiang are considered medical source statements by the Social Security Administration and those opinions must be addressed by an ALJ in formulating an RFC. *See* SSR 96-6p ("Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's

---

[5] Though social security rulings do not necessarily carry the force of law, they are entitled to deference. *See Fagan v. Astrue*, 231 F.App'x 835, 837 (10th Cir. 2007). Indeed, the particular strictures of SSR 96-8p have been explicitly endorsed by the Tenth Circuit in several unpublished opinions. *See Alexander v. Barnhart*, 74 F.App'x 23, 28 (10th Cir. 2003) (unpublished); *Southard v. Barnhart*, 72 F.App'x 781, 784 (10th Cir. 2003).

impairment(s) must be treated as expert opinion evidence of nonexamining sources [and] Administrative law judges . . . may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

It is true that ALJ Reyes considered Dr. Mellon's evaluation of Mr. Pena in formulating the RFC, and he presented a fairly comprehensive summary of Dr. Mellon's findings in his decision. AR at 15-16. The ALJ acknowledged Dr. Mellon's assessment of Mr. Pena's moderate limitations in interacting with co-workers and supervisors and in working without supervision. *Id.* at 15. However, the ALJ never explained what weight he was giving to Dr. Mellon's assessment, which constitutes legal error. SSR 96-6p. More importantly, while the ALJ presented a summary of Dr. Mellon's findings, many of those findings were never incorporated into the ultimate RFC determination.

It appears that the ALJ accepted Dr. Mellon's opinion that Mr. Pena suffered from several 'mild' restrictions - namely those involving Mr. Pena's ability to concentrate for more than two hours at a time and to engage in work that was not simple, routine, or repetitive. AR at 14; 187. However, the ALJ ignored Dr. Mellon's opinion that Mr. Pena suffered from more severe restrictions in his ability to interact with co-workers and supervisors. ALJ Reyes was impermissibly picking and choosing which of Dr. Mellon's findings to incorporate into the RFC. This constitutes legal error. *See Carpenter v. Astrue*, 55 F.3d 530, 532 (10th Cir. 1995) ("[A]n ALJ may not pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") (citations omitted); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted). While ALJ Reyes was free to reject Dr. Mellon's

10

findings if he believed that those findings were not substantially supported by evidence in the record, he was not allowed to adopt certain portions of Dr. Mellon's report while ignoring others.

ALJ Reyes compounded his error in formulating Mr. Pena's RFC by failing to consider Dr. Chiang's findings of fact. As stated above, Dr. Chiang is considered an expert in the evaluation of disability claims and, as such, her findings of fact must be addressed by an ALJ in formulating an RFC. *See* SSR 96-6p. Not only was the ALJ's failure to consider Dr. Chiang's findings legally incorrect, it is also significant since her report supported a finding that Mr. Pena is limited in his ability to interact with supervisors and coworkers.  Specifically, Dr. Chiang found that Mr. Pena was moderately limited in his ability to sustain an ordinary routine without supervision, to accept instruction and criticism from supervisors, and to get along with co-workers without exhibiting behavioral extremes. AR at 163-64. Because Dr. Chiang's report echoed that of Mr. Mellon with regard to Mr. Pena's interactive limitations, those opinions should have been given significant weight by the ALJ. *See* 20 C.F.R. § 416.927(d) ("[W]e will weigh every medical opinion we receive . . . [g]enerally, the more consistent an opinion is with the record as a whole, the more weight will be given to that opinion.").

ALJ Reyes failed to follow the correct legal standards in formulating Mr. Pena's RFC because he failed to explain what weight, if any, he was giving to Dr. Mellon and Dr. Chiang's expert opinions. He further failed to properly consider these medical opinions when he adopted some, but not all, of Dr. Mellon's findings and ignored Dr. Chiang's findings altogether. Because the ALJ failed to follow the correct legal standards in establishing Mr. Pena's RFC, the hypothetical question posed to the vocational expert at

Mr. Pena's disability hearing was similarly flawed.

### B. The ALJ Posed an Incomplete Hypothetical to the Vocational Expert

Mr. Pena contends that the hypothetical question posed to the vocational expert was defective because it failed to include all of Mr. Pena's functional limitations. (Doc. 19 at 5). He argues that the ALJ's failure to include the interactive limitations in crafting the hypothetical question was legally incorrect. (*Id.* at 5-8). This Court agrees.

It is well settled that hypothetical questions submitted to a vocational expert "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995). "[T]estimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted). As detailed in the previous section, the ALJ failed to consider or include any of Mr. Pena's interactive limitations in formulating the RFC. A hypothetical question based upon a defective RFC is not valid. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1270 (10th Cir. 2008) ("[A] proper finding of [a claimant's] mental and physical residual functional capacities . . . is necessary to correctly phrase the ALJ's hypothetical question to the VE."). In this instance, testimony from the vocational expert based upon an incomplete RFC cannot not based upon substantial evidence.

The Commissioner contends that the ALJ's failure to include the interactive limitations in the hypothetical question was harmless and did not prejudice Mr. Pena. (Doc. 20 at 3-5). The Commissioner first argues that the evidence in the record did not necessarily support Dr. Mellon and Dr. Chiang's opinion that Mr. Pena suffered from

significant interaction problems. (*Id.* at 3). The Commissioner claims that reports from Dr. Mellon and other psychologists show that Mr. Pena had good insight and judgment and that Mr. Pena was capable of interacting with his doctors. (*Id.*). The Commissioner also points to notations by Dr. Mellon and other psychologists wherein Mr. Pena was alternately described as being "polite and cooperative," and as being able to "interact adequately with co-workers and supervisors." (*Id.* at 3-4). These arguments are unpersuasive.

While the Commissioner claims that the record does not support the interactive limitations found by Dr. Mellon and Dr. Chiang, the ALJ himself acknowledged those interactive limitations when he described them in his decision. *See* AR at 15-16. Therefore the issue is not whether the evidence in the record supports the Commissioner's opinion, but why the ALJ failed to follow the correct legal standards in formulating the RFC and the resulting hypothetical. Given that the ALJ acknowledged the moderate interactive limitations established in Dr. Mellon's report, the ALJ erred in failing to further address those limitations in either the RFC or in posing his hypothetical question to the vocational expert. These omissions must be remedied on remand. *See, e.g.*, *Miranda v. Barnhart*, 205 F.App'x 638, 643 (10th Cir. 2005); *Smith v. Barnhart*, 172 F.App'x 795, 800 (10th Cir. 2006) ("Because the ALJ omitted, without explanation, impairments he found to exist, the hypothetical question was flawed.").

The Commissioner next argues that, even if Mr. Pena is moderately limited in his ability to interact with co-workers and supervisors, Mr. Pena should still be able to perform the jobs identified by the vocational expert. (*See, e.g.*, Doc. 20 at 4):

> [Dr. Mellon's] report states that Pena admitted he gets along "okay until the first disagreement." This shows that Pena is similar to everyone and would not have any initial problems working with supervisors or co-

workers."

\* \* \* \* \*

"Noteworthy . . . descriptions of the enumerated occupations of caretaker and bagger . . . demonstrates that these jobs do not require interaction with supervisors and co-workers that would be precluded even if the term "moderately limited" is read broadly.

(Doc. 20 at 4).

These arguments fail because they constitute post-hoc rationalizations of the ALJ's legal error. Courts "may not create or adopt post-hoc rationalizations to support the ALJ's decisions that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 842 F.3d 1205, 1207 (10th Cir. 2007); *Daniell v. Astrue*, 384 F.App'x 798, 804 (10th Cir. 2010).

Wherefore,

**IT IS HEREBY ORDERED THAT** Plaintiff's *Motion to Remand or Reverse Administrative Agency Decision* (Doc. 18) is GRANTED to the extent that it seeks remand for rehearing. This matter shall be remanded to the Commissioner of Social Security for a hearing consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.